**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.

BRUCE HARBOUR,

Plaintiff,

v.

EXTRACTION OIL & GAS, INC., BEN DELL,
TOM TYREE, MORRIS CLARK, CARRIE FOX,
CARNEY HAWKS, MICHAEL WICHTERICH, and
HOWARD A. WILLARD, III,

       Defendants.

---

**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS AND
JURY DEMAND**

---

Plaintiff Bruce Harbour ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

**NATURE OF THE ACTION**

1.    This is an action against Extraction Oil & Gas, Inc. ("Extraction" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed merger (the "Proposed Transaction") of Extraction and Bonanza Creek Energy, Inc. ("Bonanza").

1

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the Company is headquartered in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Extraction common stock.

7. Defendant Extraction is an independent oil and gas company that focuses on the acquisition, development, and production of oil, natural gas, and natural gas liquid reserves in the Rocky Mountain region, primarily in the Wattenberg Field of the Denver-Julesburg Basin of Colorado. The Company is incorporated in Delaware and its principal executive offices are located in Denver, Colorado. The Company's common stock trades on the NASDAQ under the ticker symbol, "XOG."

8. Defendant Ben Dell ("Dell") is Chairman of the Board of the Company.

9. Defendant Tom Tyree ("Tyree") is Chief Executive Officer and a director of the Company.

10. Defendant Morris Clark ("Clark") is a director of the Company.

11. Defendant Carrie Fox ("Fox") is a director of the Company.

12. Defendant Carney Hawks ("Hawks") is a director of the Company.

13. Defendant Michael Wichterich ("Wichterich") is a director of the Company.

14. Defendant Howard A. Willard, III ("Willard") is a director of the Company.

15. Defendants Dell, Tyree, Clark, Fox, Hawks, Wichterich, and Willard are collectively referred to herein as the "Individual Defendants."

16. Defendants Extraction and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A. The Proposed Transaction

17. On May 10, 2021, Extraction and Bonanza announced that they had entered into a definitive agreement to combine in an all-stock merger. Under the terms of the definitive merger agreement, Extraction shareholders will receive a fixed exchange ratio of 1.1711 shares of Bonanza common shares for each share of Extraction common stock owned on the closing date. The press release announcing the Proposed Transaction states, in pertinent part:

**Bonanza Creek and Extraction to Combine in Merger of Equals, Creating Civitas Resources - a New Colorado Energy Leader and the State's First Net-Zero Oil & Gas Producer**

NEWS PROVIDED BY
**Bonanza Creek Energy, Inc.; Extraction Oil & Gas, Inc.**
May 10, 2021, 08:05 ET

DENVER, May 10, 2021 /PRNewswire/ -- Bonanza Creek Energy, Inc. (NYSE: BCEI) ("Bonanza Creek") and Extraction Oil & Gas, Inc.

3

(NASDAQ: XOG) ("Extraction"), today announced that they have entered into a definitive agreement to combine in an all-stock merger of equals. The combined company, to be named Civitas Resources, Inc. ("Civitas"), will be the largest pure-play energy producer in Colorado's Denver-Julesburg (DJ) Basin, with an aggregate enterprise value of approximately $2.6 billion (based on the closing share prices of Bonanza Creek and Extraction on May 7, 2021).

\*   \*   \*

**TRANSACTION DETAILS**

Under the terms of the definitive merger agreement, Extraction shareholders will receive a fixed exchange ratio of 1.1711 shares of Bonanza Creek common shares for each share of Extraction common stock owned on the closing date. Based on the exchange ratio and the closing price of Bonanza Creek's common stock on May 7, 2021, Civitas would have an aggregate enterprise value of approximately $2.6 billion. Upon completion of the transaction, Bonanza Creek and Extraction shareholders will each own approximately 50.0% of Civitas, both on a fully diluted basis.

The transaction, which is expected to close in the third quarter of 2021, has been unanimously approved by the boards of directors of both companies. Funds managed by Kimmeridge Energy own approximately 38% percent of the outstanding shares of Extraction and have entered into a support agreement to vote in favor of the transaction. The closing of the merger is subject to customary closing conditions, including approvals by Bonanza Creek and Extraction shareholders.

\*   \*   \*

**GOVERNANCE AND LEADERSHIP**

Following the merger, the Civitas board of directors will consist of eight members, four directors from Bonanza Creek and four from Extraction. Extraction's current Chairman, Ben Dell, will be Chairman of the Board, and Bonanza Creek's current President and Chief Executive Officer will be President and CEO of Civitas. The combined company's executive team will include demonstrated leaders from each of Bonanza Creek and Extraction, including: Matt Owens as EVP and COO, Marianella Foschi as EVP and CFO, Skip Marter as EVP and General Counsel, Sandi Garbiso as SVP and CAO, and Brian Cain as VP of External Affairs and ESG Policy. Civitas will be headquartered in Denver.

**ADVISORS**

J.P. Morgan Securities LLC is serving as financial advisor and Vinson & Elkins LLP is serving as legal advisor to Bonanza Creek. Petrie Partners Securities, LLC

is serving as financial advisor and Kirkland & Ellis LLP is serving as legal advisor to Extraction.

* * *

**ABOUT THE COMPANIES**

Bonanza Creek is an independent oil and natural gas company engaged in the acquisition, exploration, development, and production of oil and associated liquids-rich natural gas in the Rocky Mountain region of the United States. The Company's assets and operations are concentrated in rural, unincorporated Weld County, Colorado, within the DJ Basin, focused on the Niobrara and Codell formations. The Company's common shares are listed for trading on the NYSE under the symbol: "BCEI". For more information about the Company, please visit www.bonanzacrk.com.

Extraction is a Denver-based independent energy company differentiated by its financial, operational and governance model. The Company is focused on developing and producing crude oil, natural gas and NGLs in the Denver-Julesburg Basin of Colorado. Extraction's common shares are listed for trading on NASDAQ under the symbol XOG. For more information, please visit www.extractionog.com.

18.     On September 28, 2021, the Company filed a Schedule 14A Definitive Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

**B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions**

19.     The Proxy Statement, which recommends that Extraction shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Extraction's and Bonanza's financial projections; (ii) the financial analyses performed by Extraction's financial advisor, Petrie Partners LLC ("Petrie Partners"), in connection with its fairness opinion; (iii) potential conflicts of interest involving Petrie Partners; (iv) the sales process leading up to the Proposed Transaction; and (v) potential conflicts of interest involving Company insiders.

20.     The omission of the material information (referenced below) renders the following

5

sections of the Proxy Statement false and misleading, among others: (i) Background of the Extraction and Crestone Peak Mergers; (ii) Recommendation of the Extraction Board and Reasons for the Extraction Merger; (iii) Certain Unaudited Prospective Financial and Operating Information; and (iv) Opinion of Extraction's Financial Advisor.

21. Unless and until the material misstatements and omissions (referenced below) are remedied before the October 29, 2021 shareholder vote on the Proposed Transaction, Extraction shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

    **1. Material Omissions Concerning Extraction's and Bonanza's Financial Projections**

22. The Proxy Statement omits material information concerning Extraction's and Bonanza's financial projections.

23. With respect to Extraction's and Bonanza's financial projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Adjusted EBITDA, and (ii) Levered Free Cash Flow; (2) Extraction's and Bonanza's net income projections; and (3) a reconciliation of all non-GAAP to GAAP metrics.

24. The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company and combined company and would allow shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisor, the Company's shareholders are unable to determine how much weight, if any,

6

to place on the Company's financial advisor's fairness opinion in determining whether to vote for or against the Proposed Transaction.

25. When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.[1]

26. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 2. Material Omissions Concerning Petrie Partners' Analyses

27. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Petrie Partners.

28. The Proxy Statement fails to disclose the following concerning Petrie Partners' "*Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions underlying the discount rates ranging from 8% to 35%; (2) the future estimated general and administrative expenses, commodity derivatives, cash taxes, and other assets and liabilities; (3) the estimated synergies expected from the Proposed Transaction; (4) the long-term debt and estimated net

---

[1] *See* Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited Oct. 3, 2021).

working capital as of March 31, 2021; and (5) the number of fully diluted shares of Extraction and Bonanza.

29. With respect to Petrie Partners' "*Property Transaction Analysis*," "*Capital Market Comparison Analysis*," and "*Corporate Transaction Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction and company Petrie Partners observed in its analyses.

30. With respect to Petrie Partners' "*Going Concern Analysis*," the Proxy Statement fails to disclose the individual inputs and assumptions underlying the (i) terminal EBITDAX multiples used in the analysis, and (ii) discount rates ranging from 11.0% to 13.0% and from 12.0% to 14.0%.

31. The valuation methods, underlying assumptions, and key inputs used by Petrie Partners in rendering its purported fairness opinion must be fairly disclosed to Extraction shareholders. The description of Petrie Partners' fairness opinion and analyses, however, fails to include key inputs and assumptions underlying those analyses. Without the information described above, Extraction shareholders are unable to fully understand Petrie Partners' fairness opinion and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Petrie Partners

32. The Proxy Statement omits material information concerning potential conflicts of interest involving Petrie Partners.

33. The Proxy Statement provides the following concerning Petrie Partners'

8

engagement:

> Under the terms of Petrie Partners' engagement letter with Extraction, Petrie Partners provided Extraction financial advisory services and a fairness opinion in connection with the Extraction merger. Pursuant to the terms of its engagement letter, Extraction has agreed to pay Petrie Partners customary fees for its services in connection with its engagement, including a success fee that is payable to Petrie Partners if the Extraction merger is consummated, and an additional success fee if the Crestone Peak merger is consummated. A portion of Petrie Partners' fee was paid upon the delivery of its opinion in connection with the Extraction board's approval of the Original Agreement, and a portion of its fee was paid in connection with the delivery of its opinion in connection with the Extraction board's approval of the Amendment. . . . During the two-year period prior to the date of Petrie Partners' opinion, Petrie Partners and its affiliates performed advisory services for Extraction and its affiliates and received customary compensation for such services.

34. The Proxy Statement, however, fails to disclose: (1) the specific amount of compensation Petrie Partners has received or will receive in connection with its engagement by the Company; (2) the specific amount of Petrie Partners' compensation that is contingent upon consummation of the Proposed Transaction; and (3) the timing and nature of the past services Petrie Partners provided Extraction, Bonanza, and their affiliates, and the amount of compensation Petrie Partners received for providing such services during the past two years. *See* 17 C.F.R. § 229.1015(b)(4) (requiring disclosure of all material relationships between a company and its financial advisors and the compensation received by the advisors during the past two years).

35. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

36. The omission of the above-referenced information renders the Proxy Statement

9

materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

37. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

38. The Proxy Statement provides that, during the sales process, Extraction executed confidentiality agreements with potential buyers, including "14 confidentiality agreements" during the summer of 2020.

39. The Proxy Statement, however, fails to disclose the terms of Extraction's confidentiality agreements, including whether such agreements contained standstill provisions with "don't ask, don't waive" (DADW) provisions (including their time of enforcement) that would preclude potentially interested parties from making superior offers for the Company.

40. Without this information, Extraction shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Extraction shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 5. Material Omissions Concerning Company Insiders' Potential Conflicts of Interest

42. The Proxy Statement omits material information concerning potential conflicts of interest involving Company insiders.

10

43. According to the Company's May 10, 2021 press release announcing the Proposed Transaction, certain Extraction employees, including Defendant Dell, will serve as either directors and/or officers of the combined company following consummation of the Proposed Transaction:

**GOVERNANCE AND LEADERSHIP**

Following the merger, the Civitas board of directors will consist of eight members, four directors from Bonanza Creek and four from Extraction. Extraction's current Chairman, Ben Dell, will be Chairman of the Board, and Bonanza Creek's current President and Chief Executive Officer will be President and CEO of Civitas. The combined company's executive team will include demonstrated leaders from each of Bonanza Creek and Extraction, including: Matt Owens as EVP and COO, Marianella Foschi as EVP and CFO, Skip Marter as EVP and General Counsel, Sandi Garbiso as SVP and CAO, and Brian Cain as VP of External Affairs and ESG Policy. Civitas will be headquartered in Denver.

44. The Proxy Statement, however, fails to disclose the details of all employment-related and compensation-related discussions and negotiations concerning the Company's officers and directors, including the parties to such communications, when they occurred, and the specific content discussed/communicated.

45. Any communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to shareholders. This information is necessary for shareholders to understand potential conflicts of interest of management and the Board. Such information may illuminate the motivations that would prevent fiduciaries from acting solely in the best interests of the Company's shareholders.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

50. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements and omissions in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the

Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E.     Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 3, 2021               Respectfully submitted,

**HALPER SADEH LLP**

/s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
         zhalper@halpersadeh.com

*Counsel for Plaintiff*